IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Clifton Melvin Heaton, Jr., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Carolyn W. Colvin, Acting Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> _____) | C/A No. 0:15-1150-TLW-PJG <br><br><br> **REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Clifton Melvin Heaton, Jr., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

### SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider, in sequence:

    (1)    whether the claimant is engaged in substantial gainful activity;

    (2)    whether the claimant has a "severe" impairment;

    (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)    whether the claimant can perform his past relevant work; and

    (5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 416.920(h).



**ADMINISTRATIVE PROCEEDINGS**

In February 2012, Heaton applied for SSI, alleging disability beginning May 15, 2009. Heaton's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. A video hearing was held on September 26, 2013, at which Heaton, who was represented by J. Michael Turner, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on December 6, 2013 concluding that Heaton was not disabled. (Tr. 13-22.)

Heaton was born in 1964 and was forty-seven years old on the date the application was filed. (Tr. 135.) He has an eighth-grade education and has past relevant work experience as a carpenter, a grinder machine worker, an assembly operator, and a scrap metal helper. (Tr. 167.) Heaton alleged disability due to hip, leg, back, and learning problems, as well as depression. (Tr. 166.)

In applying the five-step sequential process, the ALJ found that Heaton had not engaged in substantial gainful activity since February 28, 2012—his application date. The ALJ also determined that Heaton's status post L4-5 laminectomy secondary to degenerative disc disease of the lumbar spine, depression, anxiety, borderline intellectual functioning, and learning disorder were severe impairments. However, the ALJ found that Heaton did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Heaton retained the residual functional capacity to

> perform light work as defined in 20 CFR 416.967(b) with frequent pushing and pulling with the left lower extremity; frequent climbing of ramps and stairs; no climbing of ladders ropes or scaffolds; frequent balancing; occasional stooping; no kneeling, crouching or crawling; and, the need to avoid concentrated exposure to machinery and heights. The claimant is further limited to occupations requiring no more than simple repetitive tasks that are not performed in a fast-paced production environment, involving only simple work related instructions and decisions with



> relatively few work place changes; and, no jobs requiring more than a 3rd grade level in reading and math.

(Tr. 16-17.) The ALJ found that Heaton was unable to perform any past relevant work, but that considering Heaton's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Heaton could perform. Therefore, the ALJ found that Heaton was not disabled since February 28, 2012, the date the application was filed.

Heaton submitted additional evidence to the Appeals Council, which denied his request for review on February 6, 2015, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

PJG

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUE

Heaton raises the following issue for this judicial review:

The ALJ failed to consider that Plaintiff meets the requirements of Listing 12.05(C).

(Pl.'s Br., ECF No. 8.)

## DISCUSSION

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 416.925(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 416.908. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 416.926(a). Heaton argues that the ALJ erred in finding that he did not meet Listing 12.05C.

Listing 12.05 provides, in pertinent part:

Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.



> . . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.[2]

The United States Court of Appeals for the Fourth Circuit has made clear that in determining whether a claimant meets Listing 12.05, the ALJ must first find that the claimant satisfies the introductory paragraph to the Listing by finding that he has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22.  Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012).  This has been described by the Fourth Circuit as "Prong 1" of Listing 12.05C.  See id. at 473.  Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D.  Here, Requirement C is at issue, requiring an IQ score of 60-70, which the Fourth Circuit describes as "Prong 2," as well as a "physical or mental impairment imposing an additional and significant work-related limitation of function," identified as "Prong 3."  Id.

No one appears to dispute that Heaton meets the Paragraph C criteria of Listing 12.05, Prongs 2 and 3.  Rather, this appeal centers on the requisite criteria in the introductory paragraph—Prong 1—requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22.  20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.  In determining that Heaton did not meet Listing 12.05C because he had not demonstrated

---

[2] Effective September 3, 2013, the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 12.05.  See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013).  While medical records and case law predating September 3, 2013 utilize the "Mental Retardation" language, the court notes that the substance of the Listing has not changed.



deficits in adaptive functioning, the ALJ explained that "the claimant's school records do not support his allegations of special education and his assertions are not supported." (Tr. 16.) Although the ALJ did not further elaborate within his Step Three findings, reading the opinion as a whole shows that Heaton cannot demonstrate that the ALJ's finding was unsupported by substantial evidence or that the ALJ failed to consider the requisite factors in determining that Heaton did not meet the introductory paragraph of Listing 12.05. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (finding that even a "cursory" explanation at Step Three may prove satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion).

As an initial matter, Heaton's reliance on school records indicating that he was enrolled in remedial math does not render the ALJ's determination that he was not in special education as alleged by Heaton at the hearing unsupported. Heaton also correctly argues that special education records are not the only evidence which can be relied upon to satisfy the introductory paragraph, and points to records demonstrating Heaton has a third-grade reading level, was retained in two grades, and had failing grades. Further, Heaton argues that the ALJ may not rely on Heaton's prior semi-skilled work history alone to preclude him from meeting Listing 12.05C. In response, the Commissioner points to numerous records in support of the ALJ's decision that Heaton did not demonstrate deficits in adaptive functioning; however, the court will limit its discussion for the purposes of this Report and Recommendation to the records and reasons offered by the ALJ in his opinion, and as stated above, reading the ALJ's opinion as a whole, the court concludes Heaton has failed to demonstrate that remand is warranted for further consideration of this Listing. For the reasons discussed below, the decision as a whole reveals that the ALJ considered the applicable factors.



**Adaptive Functioning Generally**

" '[A]daptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age . . . ." Program Operations Manual System ("POMS") § DI 24515.056(D)(2). "Adaptive activities" are described as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *5 (M.D.N.C. Apr. 16, 2012) (citing Blancas v. Astrue, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpart P, App. 1, §§ 12.05, 12.00(C)(1)). Deficits in adaptive functioning include limitations in "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (citing Atkins v. Virginia, 536 U.S. 304, 308 n.3 (2002)). Case law shows that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. See, e.g., Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012) (collecting cases).

Cases interpreting Listing 12.05 provide some parameters for an ALJ's conclusion on this issue. Compare Hancock, 667 F.3d at 475-76 (affirming the Commissioner's determination that the claimant did not have the requisite deficits in adaptive functioning where the claimant had worked as a battery assembler and a drop clipper; performed tasks such as shopping, paying bills, and making change; took care of three small grandchildren at a level acceptable to the State Department of Social Services; did a majority of the household chores, attended school to obtain a GED; and did puzzles for entertainment) with Rivers v. Astrue, No. 8:10-cv-314-RMG, 2011 WL 2581447 (D.S.C.

June 28, 2011) (reversing a finding of no deficits in adaptive functioning where the claimant was functionally illiterate, showed poor academic performance with multiple IQ tests in or before the third grade showing scores in the 50s, and dropped out of school in the ninth grade).  Cases interpreting Listing 12.05C also provide instruction on the factors that play into this determination.  For example, even though IQ range constitutes the Prong 2 determination, the actual score is often considered in conjunction with the level of adaptive functioning.  See, e.g., Conyers v. Astrue, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8 (June 29, 2012), adopted in 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012); Holtsclaw v. Astrue, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011) (both discussing the IQ score when considering the level of adaptive functioning at the Prong 1 inquiry); see also Norris v. Astrue, No. 7:07-CV-184-FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008) (noting that a diagnosis of mental retardation is possible with an IQ score of 70-75 when there are significant deficits in adaptive behavior and may not be supported even with an IQ score of below 70 when there are not significant deficits).  Moreover, in the absence of any evidence of a change in the claimant's intellectual functioning, the law assumes that the claimant's IQ has remained relatively constant.  Luckey v. U.S. Dep't of Heath & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989).  Similarly, a claimant's diagnosis, if there is one, is pertinent:  when a claimant has been diagnosed as mildly mentally retarded in a Listing 12.05C case, courts are more likely to affirm a finding of deficits in adaptive functioning prior to age 22 than if the claimant has the lesser diagnosis of borderline intellectual functioning.  Conyers, 2012 WL 3282329, at *9 (discussing the claimant's level of adaptive functioning and noting that the claimant was classified in the low end of the spectrum of mildly mentally retarded);[3] Salmons, 2012 WL

---

[3] Although Conyers was addressing Listing 12.05B, diagnosis can be pertinent even when the issue is whether the Listing 12.05C criteria are met.



1884485, at *5 (discussing the claimant's level of adaptive functioning and noting that the claimant was classified in the borderline intellectual functioning category).

Whether the claimant is illiterate is also an important factor. See Luckey, 890 F.2d at 668-69; Salmons, 2012 WL 1884485, at *7; Holtsclaw, 2011 WL 6935499, at *4; Rivers, 2011 WL 2581447, at *3-4. Similarly, whether the claimant has ever lived independently is a relevant inquiry. Compare Salmons, 2012 WL 1884485, at *4 with Holtsclaw, 2011 WL 6935499, at *5. Another guiding factor is whether the claimant has ever provided care for others, or, conversely, whether he himself is dependent on others for care. Compare Salmons, 2012 WL 1884485, at *7 (noting the claimant was heavily dependent on his mother and was not responsible for the care or supervision of anyone else) and Holtsclaw, 2011 WL 6935499, at *4-5 (noting the claimant had never lived independently and required a parent's help) with Hancock, 667 F.3d at 475-76 (affirming denial of benefits where the claimant managed the household and cared for her three young grandchildren) and Caldwell v. Astrue, No. 1:09cv233, 2011 WL 4945959, at *3 (W.D.N.C. Oct. 18, 2011) (noting the claimant assisted in the care of an elderly parent).

School records and past academic performance are also important indicators of deficits in adaptive functioning prior to age 22. See Salmons, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); Rivers, 2011 WL 2581447, at *3 (noting that the claimant was classified as special needs at school, had repeated evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth grade); see also Conyers, 2012 WL 3282329, at *8-9 (discussing the claimant's school history). Additionally, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. Hancock, 667 F.3d at 475-76



(concluding the ALJ's finding that the claimant did not manifest the requisite deficit in adaptive functioning to be supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); Harts v. Astrue, C/A No. 0:10-1893-CMC-PJG, 2012 WL 529982, at *6 n.3 (D.S.C. Jan. 30, 2012) (distinguishing Luckey because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning and because the claimant did not otherwise meet the Listing 12.05C criterion of a valid IQ score within the range of 60-70), adopted and incorporated in 2012 WL 529980 (D.S.C. Feb. 17, 2012). Finally, the tasks a claimant is able to undertake, although not determinative, have been considered in this analysis. See generally Radford v. Astrue, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (finding that the claimant's ability to perform certain tasks was not inconsistent with mild mental retardation); see, e.g., Hancock, 667 F.3d at 476 n.3 (affirming the ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); Salmons, 2012 WL 1884485, at *7 (discussing the claimant's inability to do household chores, cook, and drive).

**Application of the Factors**

Applying these factors to the record presented, the court finds that Heaton has failed to show that the ALJ's conclusion that Heaton did not meet the Prong 1 requirements was unsupported by substantial evidence or controlled by an error of law. The ALJ's decision reflects that he considered many of the factors discussed herein in reaching his conclusion. For example, the decision discusses Heaton's academic history, noting that although Heaton withdrew during the ninth grade with failing grades, "he participated in regular classes and not special education, and that up to the 8th grade h[is] grades ranged from As to Cs." (Tr. 20.) The ALJ observed that during a consultative examination, Heaton reported "no deterioration of personal habits and no problems preparing meals or completing

household tasks and he reported relating well to others." (Tr. 19.) Further, the ALJ observed that the consultative intelligence testing resulted in "a Full Scale IQ score of 65 with sub-test scores indicating reading at the 3.5 grade level and arithmetic skills at the 3.8 grade level." (Tr. 19-20.) Additionally, the results indicated borderline intellectual functioning, not mental retardation or intellectual disability. (Tr. 20); see also 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(A) (requiring *documentation of a medically determinable impairment* as well as consideration of the degree of limitation that impairment may impose). Finally, as discussed by the ALJ, the examiner opined "that the occupations requiring more verbal skills will be difficult for the claimant and that he tends to process information much slower than average and that his judgment and basic mathematical knowledge appeared to indicate an ability for independent management of finances." (Tr. 20.) With regard to Heaton's mental impairments, the ALJ concluded, in pertinent part, that

> the consultative examiner reported the claimant followed simple instructions throughout the exam and that the claimant reported no problems preparing meals or completing household chores with adequate social functioning and a small social network. Although the test scores were low, the examiner concluded the claimant functioned in the borderline range and was able to read and do math on a 3rd grade level.

(Id.) This evidence further supports the finding that Heaton did not have deficits in adaptive functioning. See Hancock, 667 F.3d at 476 (upholding a finding of no deficits in adaptive functioning where the claimant demonstrated, among other factors, the ability to shop, handle change, and perform household chores including cooking); Chapman, 2013 WL 3991105, at *11-14 (upholding a finding of no deficits in adapting functioning where the ALJ explained, among other factors, that the claimant demonstrated the ability to maintain grooming and hygiene, performed household chores, and shopped for groceries).

PJG

Further, the ALJ's decision reflects that he found Heaton's past relevant work included semi-skilled and skilled work. (Tr. 20.) The court notes that "this district has repeatedly upheld an ALJ's finding that a claimant did not have deficits in adaptive functioning based in part on a past ability to perform semi-skilled or skilled work." Weatherford v. Colvin, No. 6:13-1885-RMG, 2014 WL 3881056, at *10 (D.S.C. Aug. 5, 2014); see also Weedon v. Astrue, No. 11-2971-DCN-PJG, 2013 WL 1315311, at *7 (D.S.C. Jan. 31, 2013), adopted by 2013 WL 1315206 (D.S.C. Mar. 28, 2013); Jenkins v. Astrue, No. 09-1653-JFA-PJG, 2010 WL 3168269, at *5 (D.S.C. Mar. 22, 2010), adopted by 2010 WL 3168268 (D.S.C. Aug. 4, 2010). As noted above, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. See Hancock, 667 F.3d at 475-76 (concluding ALJ's finding that the claimant did not manifest requisite deficits in adaptive functioning was supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked semi-skilled jobs).

Because the decision as a whole reflects that the ALJ considered pertinent evidence and weighed appropriate factors in analyzing whether Heaton met Listing 12.05C, the court cannot say that his decision was not supported by substantial evidence or was controlled by error of law. In fact, the only evidence that Heaton appears to point to—enrollment in remedial math, his current reading level, failing grades, and retention in two grades—were either specifically acknowledged by the ALJ or are insufficient to render the ALJ's decision unsupported. See Hancock, 667 F.3d at 476; see also Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (finding that even a "cursory" explanation at Step Three may prove satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion). "We must sustain the ALJ's decision, even if we disagree with it, provided the

determination is supported by substantial evidence . . . ." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, Heaton has not shown that the ALJ's determination that Heaton failed to establish deficits in adaptive functioning as required for Listing 12.05C is unsupported by substantial evidence or controlled by legal error.

## RECOMMENDATION

For the foregoing reasons, the court finds that Heaton has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 21, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).